UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WILLIAMS and LEGACY GLOBAL DEVELOPMENT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS KULA; JOANNE KULA; ELIZABETH DIAZ; KATHI OSTEEN; STEPHEN HONEYBILL; LINDSEY STEWART; THERESA RAGLEN; ROGER "ARI" KAHN; and DOES 1-20,<br><br>Defendants. | Case No.: 20-CV-1120 TWR (AHG)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION, (2) DISMISSING WITHOUT PREJUDICE PLAINTIFFS' VERIFIED COMPLAINT, AND (3) DENYING AS MOOT DEFENDANTS' ANTI-SLAPP MOTIONS**<br><br>(ECF Nos. 1, 3, 14–19, 46) |

Presently before the Court are the fully briefed Special Motions to Strike (CCP § 425.16) or, Alternatively, Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants Roger "Ari" Kahn (ECF No. 3), Elizabeth Diaz (ECF No. 14), Stephen Honeybill (ECF No. 15), Kathi Osteen (ECF No. 16), Lindsey Stewart (ECF No. 17), and Theresa Raglen (ECF No. 18), as well as the Motion to Dismiss Complaint Under F.R.C.P. 12(b)(2) Based Upon Lack of Personal Jurisdiction (ECF No. 19) and Joinder in Codefendants' Special Motions to Strike (ECF No. 46) filed by Defendants Thomas and Joanne Kula. The Court held a hearing on December 18, 2020. (*See* ECF No. 75.) Having

carefully reviewed the Parties' arguments, the record, and the law, the Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction (ECF Nos. 3, 14–19), **DISMISSES WITHOUT PREJUDICE** Plaintiffs Christopher Williams and Legal Global Development LLC's Verified Complaint ("Compl.," ECF No. 1) for lack of personal jurisdiction over Defendants, and **DENIES AS MOOT** Defendants' special motions to strike (ECF Nos. 3, 14–18, 46).

## BACKGROUND

On June 8, 2020, Plaintiffs filed this action against Defendants for (1) intentional interference with contractual relations, (2) defamation, (3) trade libel, (4) intentional interference with prospective economic advantage, and (5) negligent interference with prospective economic advantage. (*See generally* Compl.) Generally, Plaintiffs allege that Defendant Kahn conspired with the remaining Defendants to remove Plaintiffs from control of Orchid Bay, a luxury real estate development in Corozal Town, Belize, by defaming and disparaging Plaintiffs in a private Facebook group. (*See generally id.*)

Plaintiffs allege that "[t]his Court has personal jurisdiction over the parties as the Defendants aimed their conduct at the State of California." (*Id.* ¶ 15.) Plaintiff Williams resides in the County of San Diego, (*id.* ¶ 1), while Plaintiff Legacy Global Development LLC ("Legacy") is a Delaware limited liability company with its principal place of business in San Diego County. (*Id.* ¶ 2.) None of Defendants, however, reside in California. (*See id.* ¶¶ 3–10.) Rather, Mr. and Mrs. Kula reside in the State of Texas, (*id.* ¶¶ 3–4); Ms. Diaz, Ms. Osteen, Mr. Honeybill, and Ms. Taglen reside in Belize, (*id.* ¶¶ 5–7, 9); Ms. Stewart resides in the State of Illinois, (*id.* ¶ 8); and Mr. Kahn resides in the State of New York. (*Id.* ¶ 10.)

Defendants filed the instant Motions on July 13, 2020. (*See* ECF Nos. 3, 14–19.)

## ANALYSIS

Each Defendant moves to strike Plaintiffs' Complaint pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") law, California Civil

Procedure Code § 425.16, or, alternatively, to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the jurisdictional issue is dispositive, the Court addresses it first.

## I. Personal Jurisdiction

### A. Legal Standard

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018). Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10.

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. ___, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

For a state court to exercise specific jurisdiction, by contrast, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (alterations and emphasis in original) (quoting *Daimler*, 571 U.S. at 127 (2014)) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–473 (1985); *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 414 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).

### B.     Discussion

Each Defendant challenges the Court's personal jurisdiction over him or her. (*See generally* ECF Nos. 3, 14, 15, 16, 17, 18, 19.)  Plaintiffs concede that this Court lacks general jurisdiction over Defendants, (*see* ECF No. 58 ("Am. Opp'n") at 21; Tr. at 3:17–20), but contend that Defendants are subject to this Court's specific jurisdiction. (*See* Am. Opp'n at 22–28.)

Specific jurisdiction requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Ninth Circuit applies a three-part test to assess whether a non-resident defendant has sufficient contacts to be subject to a State's personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the

burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

Under the first prong of the Ninth Circuit's test, courts are to "apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). "The latter test applies here given the nature of the underlying claims." *Id.* "Purposeful direction 'requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 803).

### 1. *Defendant Kahn*

Plaintiffs argue that the Court has specific jurisdiction over Defendant Kahn on two alternative theories: (1) Defendant Kahn purposefully availed himself of California's laws by consummating the sale of Orchid Bay—the business transaction from which this lawsuit ultimately arises—in California with the California-based Plaintiffs, (*see* Am. Opp'n at 23; Tr. at 4:18–5:3, 5:17–6:9); and (2) Defendant Kahn purposefully directed his conduct at California by orchestrating a conspiracy to defame the California-based Plaintiffs and interfere with their business relations. (*See* Am. Opp'n at 23; Tr. at 18:21–19:16.) Defendant Kahn counters that neither of these bases suffices to establish specific jurisdiction over him. (*See* ECF No. 60 ("Kahn Reply") at 12–13.) Because Plaintiffs' conspiracy-based theory of jurisdiction applies to both Defendant Kahn and the remaining Defendants, (*see* Tr. at 4:13–17, 5:9–16), the Court addresses only Plaintiffs' purposeful availment argument here and analyzes Plaintiffs' purposeful direction theory as to all Defendants below. *See infra* Section I.B.2.

///

The purposeful availment analysis "is most often used in suits sounding in contract." *Schwarzenegger*, 374 F.3d at 802. Plaintiffs conceded at oral argument that "there is no contract claim at issue here, so this [case] involve[es] . . . tortious defamation claims." (Tr. at 15:19–21.) Further, "[Defendant Kahn] received no benefit, privilege, or protection from California in connection with the [alleged defamation], and the traditional quid pro quo justification for finding purposeful availment thus does not apply." *See Schwarzenegger*, 374 F.3d at 803. The purposeful direction analysis therefore applies to Plaintiffs' claims.

Even if the Court were to consider Plaintiffs' underlying business relationship with Defendant Kahn, those contacts would fail the second prong of the Ninth Circuit's test for specific jurisdiction, which requires that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger*, 374 F.3d at 802). The Ninth Circuit has adopted a "but-for" test for relatedness. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)). Under the but-for test, the court asks, "but for [the defendant]'s contacts with . . . California, would [the plaintiff]'s claims . . . have arisen?" *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Although broadly construed, "'but for contacts' still must have some degree of proximate causation to be considered for purposes of jurisdiction." *Metro-Goldwyn-Mayer*, 243 F. Supp. 2d at 1085 (citing *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051–52 (9th Cir. 1997)). Consequently, contacts that are "too attenuated" will not satisfy the "but for" test. *See Am. Nat'l Red Cross*, 112 F.3d at 1051.

Here, Plaintiffs argue that their 2020 claims for defamation and tortious interference would not have arisen but for Defendant Kahn's 2016 consummation of a business relationship in California. (*See* Am. Opp'n at 24 (citing *Cruise Quote Inc. v. Crystal Cruises, Inc.*, No. 2:10-CV-00318-PHX, 2010 WL 2743506, at *4 (D. Ariz. July 12, 2010)).) While true on some level, "proximate cause . . . limits liability at some point

before the want of a nail leads to loss of the kingdom." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 707 (2011) (Roberts, C.J., dissenting). Were Plaintiffs suing Defendant Kahn for breach of the underlying business contract, such claims would undoubtedly "arise[] out of" Defendant Kahn's negotiation of the agreement in San Diego. But, as Plaintiffs concede, the claims here are for tortious defamation, not breach of contract. (*See* Tr. at 15:19–21; *see also* ECF No. 6-14 ("Kahn Mem.") at 12.) Nonetheless, Plaintiffs maintain that the underlying business transaction is "relevant" because some of the allegedly defamatory statements concern the financial status of Orchid Bay at the time of the sale. (*See* Tr. at 10:7–11:12.) But, as Defendant Kahn noted at oral argument, there is a false equivalence between the financial status of Orchid Bay at the time of the sale and the negotiation of the contract. (*Id.* at 12:19–21.) Accordingly, the allegedly defamatory statements are "too attenuated" from the 2016 negotiations for the Court to conclude that Plaintiffs' claims arise out of Defendant Kahn's forum-related activities. *See, e.g.*, *Metro-Goldwyn-Mayer*, 243 F. Supp. 2d at 1085 (concluding that the plaintiff's "implicit theory of relatedness would swallow the rule, at least with respect to corporate defendants," where the plaintiff asserted copyright infringement claims in California based on the defendants' "overall corporate activities" in the forum state); *see also Rose v. Miss Pac., LLC*, No. C08-5768RJB, 2009 WL 596578, at *2, *6 (W.D. Wash. Mar. 9, 2009); *Digitone Indus. Co. v. Phoenix Accessories, Inc.*, No. 2:08-CV-00404-RLHRJJ, 2008 WL 2458194, at *1, *5 (D. Nev. June 13, 2008).

### 2. *Remaining Defendants*

Plaintiffs contend that the Court has personal jurisdiction over all Defendants because they purposefully directed their conduct at California through their "coordinated . . . efforts to . . . defame Plaintiffs and interfere with Plaintiffs' business relations" while Plaintiffs were residents of California. (*See* Tr. at 18:21–19:16, 23:17–19; *see also* Am. Opp'n at 23–26.) Plaintiffs add that all Defendants except for Defendant Kahn "had numerous contacts with Plaintiffs in the form of recurring emails with the California

/ / /

resident Plaintiffs," (*id.* at 26), and that three of the 75 members of the Facebook group were located in California. (*Id.* at 27.)

As Plaintiffs themselves recognize, after the Supreme Court's decision in *Walden*, something more is required of Defendants to subject them to personal jurisdiction in California than engaging in wrongful conduct targeted at Plaintiffs known to be California residents. (*See* Am. Opp'n at 22 (citing *Axiom Foods, Inc. v. Acerchem Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017)).) Evening assuming that Defendants knew that Plaintiffs were California residents—which Defendants dispute, (*see* ECF No. 59 ("Kula Reply") at 5; ECF No. 61 ("Diaz et al. Reply") at 5)—Plaintiffs fail to adduce the something more required after *Walden*.

Here, none of the Defendants resides in California, (*see* Compl. ¶¶ 3–10), meaning none of the allegedly defamatory statements was made in California. The allegedly defamatory statements were published on—and later deleted from, (*see id.* ¶ 59)—a private Facebook group, the "Orchid Bay Homeowners Association Forum," which was administered by Orchid Bay owners. (*Id.* ¶ 40.) The statements at issue were made to other Orchid Bay owners. (*See id.* ¶¶ 41, 44–48, 50–51, 53.) Although Plaintiffs allege that Defendant Kahn was the source of several of the allegedly defamatory remarks, (*see id.* ¶¶ 42–43, 48, 50–51), Defendant Kahn is a resident of New York. (*Id.* ¶ 10.) While Plaintiffs attempt to distinguish *Burdick v. Superior Court*, 233 Cal. App. 4th 8 (2015), the facts in this case are more similar to those addressed by the California Court of Appeal in *Burdick* than those encountered by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

In *Burdick*, the plaintiffs, who were physician-scientists and entrepreneurs maintaining a blog that discussed science and skin care, published blog entries questioning the safety and efficacy of the defendants' skin care product. 233 Cal. App. 4th at 14. In response, the defendants began "a campaign of harassment and defamation against Plaintiffs." *Id.* at 14–15. As relevant to the appeal, one defendant resided in Illinois, from where he made (and later removed) an allegedly defamatory post about the plaintiffs on his

personal Facebook page. *Id.* at 15. The defendant also worked as an independent contractor for an Illinois corporation that provided consulting services to one of the corporate defendants. *Id.* After the plaintiffs sued for defamation and related torts, *see id.* at 14, the defendant moved to quash service of the summons for lack of personal jurisdiction. *Id.* at 15. The Superior Court denied the motion under the "effects" test outlined in *Calder*, and the Court of Appeal denied the defendant's writ petition. *Burdick*, 233 Cal. App. 4th at 16. The California Supreme Court, however, granted the defendant's petition and directed the Court of Appeal to vacate its prior order and to issue an order to show cause why the petition should not be granted given the United States Supreme Court's decision in *Walden*. *Burdick*, 233 Cal. App. 4th at 16.

Upon considering *Walden*, the Court of Appeal issued a writ of mandate directing the respondent Superior Court to vacate its order denying the defendant's motion to quash. *Burdick*, 233 Cal. App. 4th at 22–26, 31. In so doing, the Court of Appeal "agree[d] with those cases holding that merely posting on the Internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts." *Id.* at 25. Rather, *Calder* and *Walden* required "evidence the nonresident defendant expressly aimed or intentionally targeted his or her intentional conduct at the forum state." *Burdick*, 233 Cal. App. 4th at 25. The Court of Appeal concluded that the plaintiffs had failed to meet this burden because the "[p]laintiffs did not produce evidence to show [the defendant]'s personal Facebook page or the allegedly defamatory posting was expressly aimed or intentionally targeted at California[;] that either the Facebook page or the posting had a California audience[;] that any significant number of Facebook 'friends,' who might see the posting, lived in California[;] or that the Facebook page had advertisements targeting Californians." *Id.*

The Court of Appeal reasoned that the case before it stood in contrast to *Calder*, where "the defamatory article had a 'California focus' in that it was specifically about an actress living in California with a California-based movie and television career, and that the reporter and editor knew the article would be published in a magazine having its largest

circulation in California. *Burdick*, 233 Cal. App. 4th at 25 (citing *Walden*, 571 U.S. at 287–88 & n.7). According to the Court of Appeal, "[i]n *Calder*, it was not the publication of the defamatory article in the National Enquirer that created jurisdiction in California. Instead, it was intentional conduct by the reporter and editor, combined with their knowledge that the defamatory article would be published in a newspaper that had its greatest circulation in California, that created jurisdiction." *Burdick*, 233 Cal. App. 4th at 26. Finding that the plaintiffs had failed to "produce evidence that [the defendant had] expressly aimed or intentionally targeted his intentional conduct at California, rather than at the[ plaintiffs] personally," the court concluded that they had failed to demonstrate facts justifying the exercise of personal jurisdiction over the defendant. *Id.*

Plaintiffs claim that *Burdick* is distinguishable because that case did not involve the alleged "concerted action" found here. (*See* Tr. at 19:17–22.) To the contrary, the Plaintiffs in *Burdick* "assert[ed] the facts supporting jurisdiction [we]re not limited to the [defendant's] Facebook posting because '[t]here was ample evidence that [the defendant]'s conduct was part of a far broader and more concerted scheme' and [the defendant] was 'a principal participant in this plan to injure Californians.'" 233 Cal. App. 4th at 24 (third alteration in original). The court explicitly rejected this argument, explaining that, "in determining personal jurisdiction, '[e]ach defendant's contacts with the forum state must be assessed individually,'" *id.* (alteration in original) (quoting *Calder*, 465 U.S. at 790) (citing *HealthMarkets, Inc. v. Super. Ct.*, 171 Cal. App. 4th 1160, 1167 (2009)), "and '[w]here conspiracy is alleged, an exercise of personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant.'" *Id.* (alteration in original) (quoting *Ctr.Point Energy, Inc. v. Super. Ct.*, 157 Cal. App. 4th 1101, 1118 (2007)) (citing *In re Auto. Antitrust Cases*, 135 Cal. App. 4th 100, 113 (2005)). Consequently, as in *Burdick*, the Court must "consider only acts committed by [each defendant] personally in determining whether he is subject to jurisdiction in California." *Id.*

/ / /

As in *Burdick* and unlike in *Calder*, Plaintiffs have failed to establish that any Defendant expressly aimed their allegedly defamatory statements at this forum. Even if three (or four) of the Facebook Group's 75 members were in California, (*see* Am. Opp'n at 27)—which the Parties hotly contest, (*see* Tr. at 27:4–10, 33:15–19, 39:12–40:22, 41:5–42:18, 46:2–22)—the vast majority of the members were located in Belize. (*See id.* at 57:23–25). The allegedly defamatory statements concerned Plaintiffs' actions in Belize. (*See* Compl. ¶¶ 42–54.) The business losses Plaintiffs allege largely concerned Orchid Bay purchasers in Belize. (*See id.* ¶¶ 61–63.) Ultimately, the allegedly defamatory statements had a "Belize focus" rather than a "California focus." *See Burdick*, 233 Cal. App. 4th at 25 (citing *Walden*, 571 U.S. at 287–88 & n.7).

Plaintiffs therefore fail to demonstrate that Defendant have any connection to this forum aside from Plaintiffs' residency here. The Supreme Court explicitly rejected such a basis for personal jurisdiction in *Walden*, reiterating both that personal jurisdiction must arise from the defendant's, not the plaintiff's, contacts to the forum state, *see* 571 U.S. at 284, and that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citing *Int'l Shoe*, 326 U.S. at 319; *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). Defendants' contacts with Plaintiffs constitute the sort of "random, fortuitous, or attenuated" connection to this State that does not support personal jurisdiction. *See id.* at 285–86; *see also W. States Hockey League v. Doungchak*, No. SA CV 15-1712 PSG (KESx), 2016 WL 5886901, at *5 (C.D. Cal. Mar. 7, 2016) (finding no express aiming at California where "the articles were written in Oregon based on Oregon sources (along with one source from Arizona), there is no indication that the California hockey based read these articles, and there is no suggestion that Plaintiff has felt any direct injury in California").

The Court addresses one final argument raised by Plaintiffs at the hearing, namely, that if the Court concludes that it lacks personal jurisdiction over Defendants, "Plaintiffs would be forced to proceed in New York, to proceed in Texas, and also to potentially attempt to proceed in Belize." (Tr. at 47:4–6.) While the Court sympathizes with the

additional burden to Plaintiffs of proceeding in multiple jurisdictions, the personal jurisdiction inquiry itself is premised on the fairness of requiring a defendant to litigate in the forum chosen by the plaintiff. *See, e.g.*, *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe*, 326 U.S. at 316). Consequently, while the burden on plaintiff and judicial economy may be relevant to the reasonableness of exercising personal jurisdiction, (*see* Tr. at 48:6–19 (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)), such factors only come into play when the plaintiff has met its burden under the first two prongs of the minimum contacts inquiry. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802. Plaintiffs failed to meet that burden here. Accordingly, the Court **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Complaint for lack of personal jurisdiction.

## II.   Anti-SLAPP

### A.   *Legal Standard*

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003), *overruled by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017)). "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)).

"California's anti-SLAPP statute allows a defendant to file a 'special motion to strike' to dismiss an action before trial." *Id.* (citing Cal. Civ. Proc. Code § 425.16). "To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* (citing *Batzel*, 333 F.3d at 1024). "The burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for

that claim to survive dismissal." *Id.* (citing Cal. Civ. Proc. Code § 425.16(b)(1); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 21 (2007)). "Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Id.* (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)).

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1).

### B.  Discussion

Because the Court concludes that it lacks personal jurisdiction over Defendants, *see supra* Section I.B, Plaintiffs urge the Court to dismiss this action without reaching Defendants' anti-SLAPP motions. (*See* Am. Opp'n at 28–29.) Mr. Kahn responds that the Court "must . . . decide[]" the anti-SLAPP motions, contending that it is "reversible error to deny an anti-SLAPP motion on a theory that it's moot due to granting a different motion." (*See* Kahn Reply at 13 & n.1 (emphasis omitted) (citing *ITN Flix, LLC v. Hinojosa*, 686 Fed. App'x 441, 445 (9th Cir. 2017) (mem.); *Collins v. Allstate Indem. Co.*, 428 Fed. App'x 688, 690 (9th Cir. 2011) (mem.); *Finato v. Keith Fink & Assocs.*, No. 16-cv-06713, 2017 WL 10716999, at *3 (C.D. Cal. May 5, 2017); *Moraga-Orinda Fire Prot. Dist. v. Weir*, 115 Cal. App. 4th 477, 480 (2004); *White v. Lieberman*, 103 Cal. App. 4th 210, 220 (2002)); *see also, e.g.*, Tr. at 44:5–13.)

The Court declines to reach the anti-SLAPP motions for several reasons. First, the Ninth Circuit and California Courts of Appeal have only held that it is error not to consider an anti-SLAPP motion—and the attendant fee motion—where the complaint is dismissed on the merits, such as through a Federal Rule of Civil Procedure 12(b)(6) motion or demurrer. *See ITN Flix*, 686 Fed. App'x at 445 (Rule 12(b)(6) motion); *Collins*, 428 Fed. App'x at 690 (Rule 16(b)(6) motion); *Finato*, 2017 WL 10716999, at *3 (Rule 12(b)(6) motions); *Moraga-Orinda Fire Prot. Dist.*, 115 Cal. App. 4th at 480 (motion challenging standing and timeliness of petition for writ of mandamus under California Elections Code § 13313); *White*, 103 Cal. App. 4th at 220 (demurrer). Here, by contrast, the Court has

1 dismissed on jurisdictional grounds. Although the California Supreme Court has recently
2 advised that a court *may* award attorneys' fees and costs to the defendant pursuant to
3 Section 425.16 where the court lacks subject-matter jurisdiction, it did not hold that an
4 award of fees is *mandatory*. *See Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 320–21, 329
5 (2017). Consequently, federal courts have denied—and continue to deny after *Barry* —as
6 moot anti-SLAPP motions when the court has dismissed the underlying action on
7 jurisdictional grounds. *See, e.g.*, *Newport Inv. Grp., LLC v. Cliett*, No. SACV 18-01597-
8 JVS(DFMx), 2019 WL 2424109, at *1 (C.D. Cal. June 10, 2019) (declining to reach anti-
9 SLAPP motion after concluding that dismissal was warranted for lack of personal
10 jurisdiction under Rule 12(b)(2)); *Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2017
11 WL 1210036, at *1, *7 (N.D. Cal. Mar. 31, 2017) (); *Sikhs for Justice, Inf. v. Facebook,*
12 *Inc.*, 144 F. Supp. 3d 1088, 1097 (2015) (denying as moot anti-SLAPP motion after
13 declining to exercise supplemental jurisdiction over remaining state law claims); *Fortinos*
14 *v. Sills*, No. C 12-3828 MEJ, 2012 WL 5870681, at 5 & n.9 (N.D. Cal. Nov. 19, 2012)
15 (same); *Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, No. 07 CV 0031 JM (CAB),
16 2007 WL 2088381, at *7 (S.D. Cal. July 17, 2007) (same).

17 Second, declining to rule on the anti-SLAPP motion makes particular sense where,
18 as here, the action is dismissed for lack of personal jurisdiction because Defendants "cannot
19 have it both ways," claiming both that the Court lacks jurisdiction over them but also
20 seeking an affirmative exercise of the Court's jurisdiction to obtain a fee award. *See*
21 Memorandum Opinion and Order, *Cammarata v. Kelly Capital Inc.*, No. 1:16-cv-00322-
22 NLH-AMD (D.N.J. Apr. 26, 2017), ECF No. 30 at *5 (citing *Ruhrgas AG v. Marathon Oil*
23 *Co.*, 526 U.S. 574, 584 (1999)). Defendant Kahn contends that he is "not hav[ing his] cake
24 and eating it, too, because [h]e w[as] sued in this court, and under the Federal Rules, [h]e
25 [is] required to assert every single defense [h]e ha[s] in [his] initial motion." (*See* Tr. at
26 44:11–14.) But while Defendants' personal jurisdiction challenge had to be raised in a
27 Rule 12 motion so as not to be waived, *see* Fed. R. Civ. P. 12(h)(1)(B), an anti-SLAPP
28 challenge in federal court is not constrained by the strict timing controls of Section

425.16(f), *see, e.g.*, *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (declining to apply Section 425.16(f) and finding timely anti-SLAPP motions filed one year into case and after transfer of venue following filing of Rule 12(b) motions), and may be asserted at later stages in the litigation, including with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See, e.g.*, *Penrose Hill, Ltd. v. Mabray*, No. 20-CV-01169-DMR, 2020 WL 4804965, at *6 (N.D. Cal. Aug. 18, 2020). On the other hand, the Court has agreed with Defendants that it lacks personal jurisdiction over them—Defendants have cited no authority requiring the Court to continue exercising jurisdiction on their behalf under such circumstances. (*See* Tr. at 50:14–17.)

Third, even if the Court were required to address Defendants' fee request, the Court would conclude that fees are not warranted here. While a court is required to award fees to the "prevailing party," *see* Cal. Civ. Proc. Code § 425.16(c)(1), the court retains "broad discretion" in making the prevailing party determination. *See, e.g.*, *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 340 (2006). A court properly may determine that a party has not prevailed where the results of an anti-SLAPP motion are "so insignificant that the party did not achieve any practical benefit from bringing the motion." *See id.*

Such is the case here. Despite having a meritorious personal jurisdiction defense, Defendants filed duplicative—and voluminous—anti-SLAPP motions. Having prevailed on their Rule 12(b)(2) motions, Defendants' anti-SLAPP motions have "not achieve[d] any practical benefit" aside from burdening the Court (and Plaintiffs) and menacing Plaintiffs with the specter of attorneys' fees.[1] (*See* Tr. at 43:12–19 (indicating that Defendant Kahn's attorney has spent hundreds of hours on this case and engaged in extensive discovery because of his client's anti-SLAPP motion), 51:5–19.) Attorneys' fees are appropriately

---

[1] This is not to say that Plaintiffs are without fault. Defendant Kahn's counsel argued at the hearing that Plaintiffs "are the ones that brought this case" and that "they know how flimsy their jurisdictional argument is" and "[t]hey could have dismissed this things five months ago when they realized what this would . . . entail[]." (*See* Tr. at 44:17–25.) Even if Plaintiffs' jurisdictional arguments were flimsy, however, that does not give Defendants license to compound the inequities and inefficiencies of this litigation.

denied under such circumstances. *See, e.g.*, *Burgoyne v. Kronenberger*, No. C-11-06376 EDL, 2013 WL 12173923, at *2 (N.D. Cal. Jan. 18, 2013) (denying request for attorneys' fees where benefit of anti-SLAPP motion was "questionable" and, "even if Defendant is right that it is the prevailing party, . . . Defendant could have avoided this motion altogether," rendering "any fees or costs incurred by Defendant . . . not reasonable and . . . not recoverable") (citing *Jackson v. Yarbray*, 179 Cal. App. 4th 75, 92 (2009)); *Moran v. Endres*, 135 Cal. App. 4th 952, 955 (2006) (affirming denial of attorneys' fees where, "[t]o be blunt, defendants' motion accomplished nothing, except that plaintiffs were put to the cost of defending the motion" because "[t]he case was essentially the same after ruling on the special motion to strike as it was before").  Further, the Court has dismissed Plaintiffs' claims without prejudice; accordingly, Defendants are not "prevailing parties" for purposes of Section 425.16(c)(1) at this time. *See, e.g.*, *Garcia v. Allstate Ins.*, No. 1:12-cv-00609-AWI-SKO, 2012 WL 4210113, at *14 (E.D. Cal. Sept. 18) ("Since Defendants' anti-SLAPP motion is being considered in federal court, and since the Ninth Circuit requires that Plaintiffs be given an opportunity to amend their complaint . . . , granting of Defendant's motion is considered a 'technical' victory that does not warrant an award of attorney's fees to Defendant as the prevailing party.") (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Brown v. Elecs. Acts, Inc.*, 722 F. Supp. 2d 1148, 1156–57 (C.D. Cal. 2010)), *report and recommendation adopted*, 2012 WL 4982145 (E.D. Cal. Oct. 17, 2012); *Martin v. Inland Empire Utilities Agency*, 198 Cal. App. 4th 611, 633 (2011) ("[B]ecause the court's order granting defendants' anti-SLAPP motion with leave to amend was the functional equivalent of a denial, defendants were not 'prevailing parties' entitled to attorney fees").

For all these reasons, the Court **DENIES AS MOOT** Defendants' anti-SLAPP motions.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction (ECF Nos. 3, 14–19) and **DISMISSES WITHOUT**

1  **PREJUDICE** Plaintiffs' Complaint (ECF No. 1).  Because the Court concludes that it
2  lacks personal jurisdiction over Defendants, the Court **DENIES AS MOOT** Defendants'
3  anti-SLAPP motions and requests for attorneys' fees (ECF Nos. 3, 14–18, 46).
4      **IT IS SO ORDERED.**

6  Dated:  December 29, 2020

                                                Honorable Todd W. Robinson
                                                United States District Court

17
20-CV-1120 TWR (AHG)